Does the Hauser application necessarily and unambiguously disclose a first and second output shaft serving as the respective first and second axle shafts? In other words, does it disclose something which is one and the same? Throughout the Hauser application, and we're talking about very simple words here, we're not talking about the last case we had with digital images and all of that, we're talking about simple mechanical products, things that aren't easily described. If Hauser intended in any way, if his invention was that the axle shaft should be the same as the motor shaft, it would have been very, very easy to say. He could have used exactly the same wording as in the claim, serves as. He could have said that the axle serves as the motor shaft, or the motor shaft serves as the axle shaft. He could have used other language from the specification of the ACHARA patent. For example, that the motor shaft functions as the axle shaft. So your argument is that because he describes these two as being connected, that necessarily means that they're two different things? Yes. But he doesn't... Going to the heart of it, yes. He doesn't describe how they're connected, right? No, he doesn't. What if they were... Necessarily. What if they were integrally connected? Well, hold on. I mean, if they're integrally connected in a way that they're one and the same, I'll give you that they're one and the same. If they're integrally connected in such a fashion that they are the same, that they're unitary, that they're inseparable, maybe they are. But again, that's only speculation. We have to say whether it's unambiguous, whether it necessarily discloses that. And Hauser never does anything like that. To the extent that it has a disclosure, it goes the other way. It uses words like connected. Instead of saying serves as, instead of saying being one and the same as, invariably it says the opposite. Well, there's nothing in the drawing, figure three, that shows anything in between the motor and the output shaft. Well, Your Honor, figure three doesn't show anything. Figure three is just a black box. We have to infer, we have to guess, we have to speculate as to what's in there. We don't know. I mean, there could be another shaft in there, there could be a series of gears. There could be a transmission. Who knows? You can't tell just from a black box what that connection is. And again, it says the motor is connected to the axle. It doesn't say the axle is part of the motor or included in the motor. Words that you and I would typically use even in our everyday life to disclose things. The example of the table. You know, you don't say a table's attached to the leg. You might say the tabletop's attached to the leg, but the table includes the leg. So just by going, you know, by the very wording, by the very wording that Hauser used, it's very clear that that was not his invention. In other words, what we're doing now and what Hauser did a year later, a year after the Acura patent issued, is he looked back in the rear view mirror and said, well, let me see, can I guess whether, you know, can I put something together and say that I invented it? And that's all that happened here. As Agilent says, you have to look at exactly what's described. And the purpose of the written scripture requirement is that you have to describe it. You can't go back and say this is what I invented. You have to actually say it there in the specification. And nowhere does Hauser do that. He always uses language. He always uses figures which imply the opposite. So if you're going to say whether something is ambiguous or necessary, you can't fit that in there. The only thing that Hauser does is necessarily the opposite of what the Acura patent claims, which is an output motor shaft, which is one in the same as, which serves as, which functions as the axle shaft. What impact, if any, is the fact that, as I understand it, your client's patent uses the same type of motor as the motor described in Hauser? Well, we use a G-roller motor. And by virtue of the same thing, that they have the same motor doesn't mean anything. I mean, our specification discloses the motor as including, as having, as part of it, a motor shaft, an output shaft. Well, their whole claim is that a G-roller doesn't have that. So if they have a G-roller motor, it's definitely a different type of G-roller motor than what my client does. You know, like having an internal combustion engine, they're not all the same. Just by the fact that it's a G-roller motor just means that it's a hydraulic motor and you've got a stator and you've got this little gear orbiting within. It doesn't necessarily mean that it can have gears. It doesn't have gears. It doesn't necessarily mean where you have shafts coming out. The board points out that a G-roller motor might have two shafts, one on each side. So the fact that they're both G-roller motors doesn't tell us anything other than they're both motors. It doesn't say that there's necessarily not a connection. It doesn't say that the axle shaft has to be, in fact, the same thing as the output shaft. And again, if you look at it, if you look at even the description of the G-roller motor in Hauser, that box, when he goes to describe it, he says the motor is connected to the axle. He doesn't say the axle is part of or the axle is included in, in the way the claims do. In your briefs and in your arguments this morning, you keep referencing to a motor shaft, but your claims don't contain the word motor shaft, just output shaft. The claims say a motor, including an output shaft. So the output shaft, whether I call it a motor shaft or not, it is part of the motor. It's included in. When the patent defines the motor, when it shows it in Figure 10A, when it goes through, I think it's JA-53, the background talks about the motor shaft, I'm sorry, the output shaft being included and being part of the motor, always. But that's different from saying that that's a motor shaft. No, I don't think it is any different because it's basically the same thing. It shows that that output shaft is the thing that's rotationally journaled. Again, the claims say that the output shaft is rotationally journaled and it's part of the motor. So that means that it's part of, I mean, it's locked in place. It rotates around a fixed axis within the motor. It doesn't really matter. And if you go on the claim, and if you want to read things to say that motor shaft or output shaft is something different, that doesn't mean anything because when you go further in the claim, it says that the output shaft must serve as the axle shaft. And it says earlier in the claim, of course, that the output shaft is part of the motor. So what we're seeing is whether you call it a motor shaft or you call it a rotationally journaled thing that delivers torque within that hydraulic motor, whatever that is, whether you call it a motor shaft or an output shaft, must be the same thing, must be one and the same as the axle shaft. And that's the key here. And if we go back to the board's decision, nowhere does the board really describe what its claim construction is. It seems to leave alone or completely ignores that last part of the claim, which says that the output shaft serves as the axle shaft. In order to give that any kind of meaning, it can't have two separate elements which are connected. So what the board said is that it doesn't matter basically what the patent says. What the board did is did claim construction in reverse. It looked at Hauser first. It looked at what can I find connected back in the Akira patent. So what the board did is essentially approach this backwards. It didn't try to find what a firm real claim construction was and then apply that to Hauser. What it did is just look at Hauser and said, well, can I find anything that fits? And that's why the board had to go back and say things like one thing can be connected to itself. Things which even just in our ordinary lives we know aren't true. You don't have to be an engineer to know that. You don't have to be versed in this field. It's just impossible. It's illogical. It's not true. And again, if we're going back to the Agilent standard, which is that something must be necessarily and unambiguously disclosed, one thing connected to itself tells you that it's not necessarily and unambiguously disclosed there. So if we go back and do a proper claim construction, the only thing that an output shaft serving as an axle shaft can mean is that they're one and the same. That's the way it's described in the Akira patent. That's the only way shown. What the board did is it essentially adopted a claim construction which isn't even disclosed in, which isn't supported. There's no adequate written description in Akira. So it developed something which is kind of false. The falsity has no basis in the patent whatsoever. So if we take and go back and ignore what the board did and look at what a true claim construction is, we know they must be one and the same. They can't be separate components. And then if we take that claim construction and apply it to Hauser, nowhere does Hauser disclose anything like that. So you're discounting the fact that in Figure 3 there is illustrated a motor, 126B, and the only shaft that is shown associated with that motor is shaft 128B, which is also the axle shaft. Well, I'm not discounting it because the specification says the motor's connected to. It doesn't say the shaft is part of. It doesn't say the shaft is included therein. So if I'm going to say... But there's only one shaft illustrated. Right, because the rest is a black box. It doesn't show what's inside the motor. If it showed the motor inside, it might show that other shaft, the motor shaft, and then a connection. But we can't guess what it is. Okay. I just don't know. Thank you very much. Would you like to reserve the rest of your time? Yes, I would, Your Honor. Okay. Mr. McDonough? Good morning. Good morning. May I please the Court, Tom McDonough on behalf of Hauser, the senior party in this case, and to express my condolences with the approach that the Achaira party is taking. First, contrary to what they say about the Board taking things out of order, it is they that are taking things out of order and confusing, conflating both the claim construction in this case or the count construction and then the application of that count to Hauser. They're using Hauser to say what the count can't mean, and that's inappropriate. Second, they're not using the right standard. They're not using the broadest reasonable interpretation standard. And third, they're adding a limitation that's not in the count. So first, they keep talking about what Hauser teaches and what the Hauser specification teaches, but we first have to look at Achaira. And if you look at Achaira, particularly the two figures, figure 10 and figure 10A, which are the two embodiments that they show, they're similar embodiments, but figure 10 is a black box that's very similar to figure 3 in Hauser. I believe the motor is labeled 80 in that one. And then in figure 10A, it's 80 prime. So you look at those and look at what's taught, and then you look at the claim. But you have to take the count. Nowhere in their briefs do they talk about the broadest reasonable interpretation. This is not an infringement case. So the count has to be given the broadest reasonable interpretation. And there's no ambiguity in the term output shaft. There hasn't been any ambiguity defined by the other party, or there's no ambiguity present in that term with respect to the Achaira specification. It's a very basic term. It's a very generic term. And in terms of adding the limitation, the definition that they give in the briefs of this is each motor shaft is one and the same with the axle shaft. Well, there's two problems with that. One is, as you've pointed out, is that the term motor shaft is not in the patent. And motor shaft is a term of prior art. Our expert, Mr. Kempe, who was credited by the board, testified, and that's in the joint appendix at pages 2105 and 2106, defining what a motor shaft is. A motor shaft is shown in, for example, figure 8 of the Hauser patent. There is a separate motor shaft and a separate output shaft. So to say that a motor shaft is the same as output shaft is simply incorrect. And Mr. Kempe testified, and this was credited, that a derailleur motor, such as is shown in the two patents, does not have a motor shaft. It has an output shaft, which is a more generic term. So the board's claim construction, or construction of the count, was absolutely correct. They looked at the Achaira patent and said, what does an output shaft mean? An output shaft is the shaft which generates the torque of the motor. So you look at that very broad definition. Did the parties agree to that term? Was there an agreement on that term? No, I don't believe we ever agreed. I don't think it's really in dispute. I don't see any actual contest, anything that's contested. They try and apply additional limitations to it, but I don't believe that they ever actually contested that the output shaft is the shaft which provides the output torque of the motor. And the board's caveat that they mentioned, the board's caveat was absolutely correct, because in a vehicle you could have various shafts that are remote from the motor. They're connected via a line of gears and the like. And so you look at those shafts, those shafts are actually transmitting the output torque of the motor, but that's not really... What about your opponent's argument that, especially in this invention, that all shafts are ultimately connected to a motor? Well, I think that was the board's construction, that the output shaft should be a shaft that's coming out of the motor or is directly engaged to the motor. And if you look at the Achira patent itself, the motor should be the output shaft in that. 84 and 84 prime in the two embodiments, they're both connected to the motor. In figure 10A, 84 prime is connected to the drive link through a gear reduction. And in figure 10, you don't know. It's a black box. You've got an output shaft coming out of the black box. So I think this connection argument is really a red herring, because it's trying to apply language that's in Hauser to the construction of the count. But if you construe the count, giving it its broadest reasonable interpretation, then you realize that it's an output shaft is any shaft which comes out of the motor and which provides the output torque of the motor. And the language about it acting as an axle was simply not contested by the parties before the board and the briefs, really. It's understood that when it acts as an axle, that it is driving the vehicle wheel. So Hauser's construction, and if you look at what Achai was disclosing, they're disclosing a wheel motor. And those are essentially the exact same as what is being described in the Hauser patent, and I think the experts agreed on that. And if you look at their brief, there's no citation to any of their experts. They're really relying on simply attorney argument to attempt to create an ambiguity in this. They don't rely on their expert who is discredited by the board. So there's no factual evidence here. So when you look at the written description of does Hauser teach the output shaft, which is an output shaft providing the output torque of the motor, and that output shaft acts as an axle, it absolutely does. It teaches it in two separate embodiments. Figure three, as you noted, is the one that they call the black box, which is the same as their figure ten. It's a gyrolar motor. It's described in the Hauser application in two separate places as being well-known in the art. In fact, the Hauser application says we're not going to cross-hatch this because gyrolar motors are well-known. And Mr. Kempe, in his declaration, which is credited by the board, said gyrolar motors are very well-known. They're fairly standard. And it's important to note that the motor itself, the key limitation that we're arguing about, was not invented by either party. This wheel motor concept is an old concept in the art. And so really there's nothing novel about that particular feature because it was well-known. So Hauser figure three teaches an output shaft coming out of the motor, and that output shaft acts as the axle, according to Hauser. That's not contested. So figure three clearly supports it. And figure eight of Hauser is a separate embodiment, which shows a different type of motor. And this type of motor does have a motor shaft, per se. Shaft 200 is a separate motor shaft. And it drives a gear reduction. And Mr. Kempe was clear that gear reduction is in a gyrolar motor as well. And the Achira patent even says that gyrolar motors obviate the need for additional gear reduction. So there clearly is some gear reduction in there. So figure eight shows a different type of motor driving gear reduction, but there's only one output shaft. And that is the shaft at the end that acts as the output shaft. And it's interesting that Hauser, in his application, refers to both the output shafts in figures three and figure eight at different points as being both output shaft and output axle. They use those interchangeably. And with respect to, for example, if you look back at the grandparent application, which is the 783 patent of Hauser, which is prior art to Achira but not prior art to Hauser, it claimed a different, slightly different embodiment. But its claim, too, even recites that the output shaft extends, or the output axle is part of the motor. So it has essentially the same limitation in a different embodiment. And there's one final point I'd like to make, and that is with regard to Hauser's motions two and three, which are not really in front of this court, but which were not decided by the board because they were moved. But we believe they should have been decided under the Phillips case because they were fully briefed and fully argued. And we think that the party of Achira has admitted that the count is anticipated to Achira, not to Hauser, but to Achira based on the 783 patent. And if you look at the decision on their motion 12, which was an attempt to pull claims out of the interference as not corresponding to the count, the board used the Hauser 783 patent as the source patent there and essentially found all of the limitations present. Then it refused to pull out claims five and 22 based on other prior art, which made them obvious. So I think based on that analysis, which has not been appealed here and which is therefore waived, the Achira claims are unpatentable to Achira under the Hauser 783 patent. Thank you. Thank you very much. Mr. Campbell, you have a few minutes for rebuttal. I should be quick, Your Honor. The counsel brought up a couple of points. For one, he said probably the most relevant is that in the Achira patent, figure 10, figure 10A shows an output shaft, a motor output shaft connected to the motor. That's not what it shows. That's not how it's described. It's described throughout the Achira patent as being part of the motor. Figure 11 refers to all those components together as part of the motor. The specification refers to them as part of the motor. In other words, the output shaft or the motor output shaft is included in the motor. It's not connected to the motor as we would understand those components. We talked about the motor output shaft, and counsel brought that up again. The first column of the patent talks about a motor output shaft, saying that they are one and the same. It says wherein the motor output shafts serve as opposed axle shafts. So whether it be an output shaft or a motor shaft, what it means is it's that journaled shaft within the motor that provides the torque. Now, again, we have to go back to Agilent. What's necessarily disclosed? What's unambiguously disclosed? During the first time around when the patent was examined, when the Achira patent was examined, the examiner found that Hauser didn't disclose any of this and found that the Achira patent was patentable over that. So clearly he thought there was an adequate disclosure in there, so that's one more strike for whether it's ambiguous or not. In other words, the examiner didn't think it was necessarily disclosed by any stretch of the imagination. Now, again, if we go back to what it was that Hauser was talking about, if Hauser was trying to tell us, you and me, you know, here is my invention, if he wanted his invention to be an output motor shaft or an output shaft that's one and the same with the axle shaft, he would have said so. It's very easy to do that, but what did he choose to do? He chose the exact opposite. He used words to imply there were separate elements. This isn't complicated art. He knew how to claim it, and he knew how to say it if he wanted to say it, and he didn't. And we go back to Agilent. What we're trying to do is figure out what he disclosed at the time, not looking back in the rearview mirror, and what Hauser told us at the time is that his invention is separate, a separate motor output shaft, and a separate connected to it axle shaft. All right. Thank you very much. Thank both counsel. The case is submitted.